* ADMISSIBLE
EVIDENCE
1:06-cv-01528-JDB
*(28 Pages)



# UNITED STATES OF AMERICA
# The State of Michigan
# DEPARTMENT OF STATE

**I, Terri Lynn Land, Secretary of State and Custodian of the Great Seal of the State of Michigan, certify that** this is a true copy of Financing Statement File Number 2006061846-9, which was filed on April 6, 2006. **\*End of Certification\***



April 12, 2006
Dated

Terri Lynn Land
Secretary of State

Form **W-8BEN**

(Rev. December 2000)

Department of the Treasury
Internal Revenue Service

## Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding

► Section references are to the Internal Revenue Code.    ► See separate instructions.
► Give this form to the withholding agent or payer. Do not send it to the IRS.

OMB No. 1545-1621

**Do not use this form for:**                                                                                                    **Instead, use Form:**

- A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . . . . . . . **W-9**
- A person claiming an exemption from U.S. withholding on income effectively connected with the conduct
  of a trade or business in the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **W-8ECI**
- A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . **W-8ECI or W-8IMY**
- A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization,
  foreign private foundation, or government of a U.S. possession that received effectively connected income or that is
  claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . . . . . . **W-8ECI or W-8EXP**

Note: These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to
claim they are a foreign person exempt from backup withholding.

- A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **W-8IMY**

Note: See instructions for additional exceptions.

### Part I    Identification of Beneficial Owner (See instructions.)

**1** Name of individual or organization that is the beneficial owner    *(Debtor)*    **2** Country of incorporation or organization

*WILLIAM FREDERICK KEMP JR*    *NONE*

**3** Type of beneficial owner:  ☐ Individual  ☐ Corporation  ☒ Disregarded entity  ☐ Partnership  ☐ Simple trust

☐ Grantor trust  ☐ Complex trust  ☐ Estate  ☐ Government  ☐ International organization

☐ Central bank of issue  ☐ Tax-exempt organization  ☐ Private foundation

**4** Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.

*NONE*

City or town, state or province. Include postal code where appropriate.    Country (do not abbreviate)

**5** Mailing address (if different from above)

*NO ADDRESS on sojourn through the American Republic*

City or town, state or province. Include postal code where appropriate.    Country (do not abbreviate)

*Michigan Republic*

**6** U.S. taxpayer identification number, if required (see instructions)    **7** Foreign tax identifying number, if any (optional)

*Resigned as Compelled SS Trustee*  ☐ SSN or ITIN  ☐ EIN

**8** Reference number(s) (see instructions)

*26 U.S.C. §7701(b)(i)(B) / UCC §9-102(a)(40)(41) @ 200319548 3-4*

### Part II    Claim of Tax Treaty Benefits (if applicable)

**9** I certify that (check all that apply):

**a** ☐ The beneficial owner is a resident of . . . . . . . . . . . . . . . within the meaning of the income tax treaty between the United States and that country.

**b** ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

**c** ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if
applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).

**d** ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a
U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

**e** ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file
Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

**10** Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article . . . . . . . . . . . of the
treaty identified on line 9a above to claim a . . . . . . . . . . . % rate of withholding on (specify type of income): . . . . . . . . . . . . . . . . . . . . . .
Explain the reasons the beneficial owner meets the terms of the treaty article: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Part III    Notional Principal Contracts

**11** ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively
connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV    Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I
further certify under penalties of perjury that:

- I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates.
- The beneficial owner is not a U.S. person.
- The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States or is effectively connected but is
  not subject to tax under an income tax treaty, and
- For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or
any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ►  *William Frederick Kemp Jr (creditor)* ©1977    *03-13-06*    *Foreign Rep. 11 U.S.C. §101, (24)*

Signature of beneficial owner (or individual authorized to sign for beneficial owner)    Date (MM-DD-YYYY)    Capacity in which acting

For Paperwork Reduction Act Notice, see separate instructions.    Cat. No. 25047Z    Form **W-8BEN** (Rev. 12-2000)

*All Rights reserved without Prejudice:*
*UCC §1-103 et. seq.; UCC §1-106; UCC §1-207*
*UCC §3-302(1), UCC §3-305. 11 U.S.C. §1515;*
*11 U.S.C. §1510; 11 U.S.C. §363;*
*HJR-192 (1933) brought privately via UCC §10-104.*

JUN 19, 2004 05:52

page 1

Form **56**
(Rev. July 2004)
Department of the Treasury
Internal Revenue Service

## Notice Concerning Fiduciary Relationship

(Internal Revenue Code sections 6036 and 6903)

OMB No. 1545-0013

**Part I    Identification**

Name of person for whom you are acting (as shown on the tax return)
*WILLIAM FREDERICK KEMP JR. (Debtor)*

Identifying number
*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*

Decedent's social security no.

Address of person for whom you are acting (number, street, and room or suite no.)
*477 EAST PEARL Rd.*

City or town, state, and ZIP code (if a foreign address, see instructions.)
*COLDWATER, MI. 49036 U.S.A. (UCC §9-307(h))*

Fiduciary's name
*William-Frederick: Kemp, Jr' suae potestate esse ©1973 (Creditor)*

Address of fiduciary (number, street, and room or suite no.)
*c/o: 477 East Pearl Road (without Prejudice-UCC §1-207)*

City or town, state, and ZIP code
*Coldwater, Michigan Republic, near CF [49036]*

Telephone number (optional)
(    )    *NONE*

**Part II    Authority**

1    Authority for fiduciary relationship. Check applicable box:

a(1) ☐  Will and codicils or court order appointing fiduciary    (2) Date of death ...........

b(1) ☐  Court order appointing fiduciary . . . . . . . . . .    (2) Date (see instructions) *01-02-2003 A.D.*

c    ☒  Valid trust instrument and amendments *2003000669-4 et seq on Commercial Registry*

d    ☐  Other. Describe ▶ ..................................................................

**Part III    Nature of Liability and Tax Notices    N/A**

2    Type of tax (estate, gift, generation-skipping transfer, income, excise, etc.) ▶ ............................

3    Federal tax form number (706, 1040, 1041, 1120, etc.) ▶ .....................................

4    Year(s) or period(s) (if estate tax, date of death) ▶ ...........................................

5    If the fiduciary listed in Part I is the person to whom notices and other written communications should be sent for **all** items
described on lines 2, 3, and 4, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐

6    If the fiduciary listed in Part I is the person to whom notices and other written communications should be sent for **some** (but not all)
of the items described on lines 2, 3, and 4, check here ▶  ☐ and list the applicable Federal tax form number and the year(s) or
period(s) applicable ..............................................................................

**Part IV    Revocation or Termination of Notice**

#### Section A—Total Revocation or Termination

7    Check this box if you are revoking or terminating all prior notices concerning fiduciary relationships on file with the Internal
Revenue Service for the same tax matters and years or periods covered by this notice concerning fiduciary relationship . ▶ ☒
Reason for termination of fiduciary relationship. Check applicable box:

a ☐  Court order revoking fiduciary authority

b ☐  Certificate of dissolution or termination of a business entity

c ☒  Other. Describe ▶ *Terminated ab initio for Cause*

#### Section B—Partial Revocation    N/A

8a    Check this box if you are revoking earlier notices concerning fiduciary relationships on file with the Internal Revenue Service for
the same tax matters and years or periods covered by this notice concerning fiduciary relationship . . . . . . . ▶ ☐

b    Specify to whom granted, date, and address, including ZIP code.
▶ ..............................................................................

#### Section C—Substitute Fiduciary    N/A

9    Check this box if a new fiduciary or fiduciaries have been or will be substituted for the revoking or terminating fiduciary and
specify the name(s) and address(es), including ZIP code(s), of the new fiduciary(ies) . . . . . . . . . . . ▶ ☐
▶ *Set - off*

For Paperwork Reduction Act and Privacy Act Notice, see back page.        Cat. No. 16375I        Form **56** (Rev. 7-2004)

*11*

Form 56 (Rev. 7-2004)                                                      Page **2**

**Part V.**  Court and Administrative Proceedings  ✗ *Also see* 1:06-cv-0152B-JDB

| Name of court (if other than a court proceeding, identify the type of proceeding and name of agency) | Date proceeding initiated |
|---|---|
| UNITED STATES SIXTH CIRCUIT (C.O.A.) | 05 December 2005 A.D. |

| Address of court | Docket number of proceeding |
|---|---|
| 100 E. 5TH ST. #540 / 333 Const.Ave. DC. | 05-2339/ *Also see* |

| City or town, state, and ZIP code | Date | Time | | Place of other proceedings |
|---|---|---|---|---|
| Cincinnati, Ohio, 45202 U.S.A. | | | a.m. p.m. | UCC §9-102 (a)(39) |

**Part VI.**  Signature

I certify that I have the authority to execute this notice concerning fiduciary relationship on behalf of the taxpayer.

Please Sign Here

_William-Frederick: Kemp J._ ©1973    _Foreign Rep II §101(24)_    03-13-2006 A.D.

Fiduciary's signature                Title, if applicable                    Date

## CONSTRUCTIVE LEGAL NOTICE:MCLS §440.1201(25)(26)(27)          Form 56 (Rev. 7-2004)

**PUBLIC NOTICE:** Filing of this instrument upon the Commercial Registry constitutes "Lawful" public notice executed without the United States in accord 28 U.S.C. §1746(1), lex loci, lex fori, country of Michigan (Republic, U.S.C.A. Const. Art. IV, §4)26 U.S.C. §7701(a)(31); executed by the real party in interest/ Secured Party of Record, 11U.S.C. §101(24),11 U.S.C §510 and MCLS §440.3306 respectively...Presented by "Special Visitation" to an agent of the United States(UCC §9-307(h)) as "admissible", non-prima facie evidence accord Fed.R. Evid., Rules 102.,201., 902(1)(3) and acknowledged by an agent of the United States (UCC §9-307(h)) as evidenced by that person's hand and official seal, accord Fed.R. Evid., Rule 902.(8), under the State Seal of Michigan verified by the Secretary and valid for all purposes, in accord House Joint Resolution -192 of June 5, 1933 (H.J.R.-192) and specifically noting 3(h),pg. 4 of 23,24 of S.A. private agreement with express reservations of all rights to those funds under SSA#_364 - 64 -5967_, without prejudice; This Instrument and official Form 56 (OMB No. 1545-0013 are executed by Special Visitation/limited appearance, on this the _13th_ day of _March_ in the year of Our Lord, Jesus the Christ, two-thousand six; Adieu; ab actis.

Take specific notice:

> Jo Anne Barnhart, et. al., Office of the Commissioner,Social Security Admin.<>and;
> )
> Mark Everson, et. al., Office of the Commissioner
> Internal Revenue Service. Ph# 202-622-5511.

Be it known and remembered by "all others" to whom these presents come and may concern, this is admissible, non-prima facie evidence in accord Fed.R. Evid., Rules 102.,201., 902(1), (3),(8) and 1005. presented by "Special Visitation" by one of sound-mind, Capacity (sui juris/alieni juris) and over the age of Majority and This Instrument is hereby presented as such in accord 28 U.S.C. §1746(1); by:

Secured Party of Record
@2003000669-4 et.seq.
the real party in interest: _William-Frederick: Kemp J._  ©1973

Affiant, a natural flesh-and-blood private
Christian Man,26 U.S.C. §7701(b)(1)(B)
reserving all rights, without prejudice.

03-13-2006 A.D.

Date

_Certified_
_true & correct_

_Barbara S. Lane_

NOTARY AGENT (U.S.A./MI. UCC §9-307(h))
Fed.R. Evid. Rule 902.(8) verified

_3 - 13 - 06_

Date

cc:All parties
file.

BARBARA S. LANE
NOTARY PUBLIC, CHIPPEWA CO., MI
MY COMMISSION EXPIRES
11 - 08 - 11

Michigan Republic
26 U.S.C. §7701(a)(31)

⑫

*Original Copy Under 2003000669-4 et seq (UCC§9-102(a)(39))
and also Under 2006061846-9, upon the Commercial Registry UCC*  Ⓚ

*True & Correct
COPY
Certified*

## Security Agreement
### Non-negotiable "Private" between the Parties

PARTIES:
                                                    (TU)2003195483-4
Party of the first part *WILLIAM FREDERICK KEMP JR.*    as "Debtor",
also under any and all derivatives and variations in the spelling of same;
Debtors Social Security Account/No. 364 - 64 - 5967.

                )
                )   and;
                )

Party of the Second part *William-Frederick: Kemp Jr* ©1973    as "Creditor"
(Secured Party), and the real party in interest as a "lawful" natural
Christian man of God; One domiciled in the country of Michigan (Republic)
Article IV, §4, U.S.C.A. Const. with express and explicit reservation of all
rights without prejudice UCC §1-207 and UCC §1-103.6; and all property
lawfully part of Secured Party's (Creditor herein) foreign estate @ 26
U.S.C. §7701(a)(31).

    country of Michigan            )
                                   )   Now come the Parties:
Article IV, §4, U.S.C.A. Const.    )

    This Security Agreement is a "private" agreement between the parties
mutually agreed upon and entered into this *twenty-sixth* day of *November* in
the year of Our Lord Jesus, the Christ nineteen-hundred and *seventy*-three
A.D., by special visitation, from lex loci, lex fori, country of Michigan
(Republic) the Parties being first duly sworn, hereunder and herein duly
depose and say under oath as follows (see: Autera v. Robinson, 419 F2d
1197, 1202 n. 22 (D.C. Cir. 1969) [cited] without prejudice.

    1.   The dicta scribed and sworn, are based upon the parties personal
knowledge of the facts set forth herein this "verified" Security Agreement/
Private agreement between the parties in accord 28 U.S.C. §1746(1); and, if
sworn as a witness the parties can testify competently to said facts;

    Be it known and remembered by all to whom these presents come and may
concern, that:

    For one silver dollar (lawful money) and valuable consideration the
party of the first part, herein and henceforth Debtor, does here by "pledge
priority", and:  (I)  grants Secured Party a security interest in Collateral
described herein below for the purpose of securing said obligation UCC
§9-105(1)(a); and, (II)  delivers all of Debtor's negotiable documents;
instruments; legal tender; money; tangible chattel paper; certified,
securities; and goods except those goods for which a security interest
cannot be perfected by the filing of a Financing Statement, same is given
into the possession of Secured Party (Creditor herein) for the purpose of
securing said obligation/indebtedness; and, (III)  authorizes that all of
Debtor's Certificates/Securities in registered and/or unregistered form, be
delivered into the possession of the Secured Party (Creditor herein)
habendum et tenendum, as of the date of this Security Agreement/Private

                                                                    ⑱

agreement between the parties, for the purpose of securing said obligation/indebtedness; and, (IV).

Debtor "warrants" as follows:

a.) **Title;** Debtor has title to the Collateral pledged.

b.) **Authority to borrow;** Debtor has authority to enter into this agreement and the person signing it is authorized by Debtor to execute this agreement.

c.) **Collateral;** The collateral is genuine, and free from default, defenses and conditions. All persons obligated upon the Collateral have authority and capacity to contract. If the Collateral or part of it consists of chattel paper, the collateral which is the subject of such chattel paper is perfected and preserved.

d.) **Other information;** The information supplied by the Debtor to the Secured Party (Creditor herein) is true and correct, **verified** supra.

2. <u>**COVENANTS AND AGREEMENTS:**</u> Debtor covenants, pledges, and agrees as follows:

a.) **Debtor agrees to;** having Debtors name placed upon a UCC Financing Statement UCC §9-102(a)(39), and thereunder as a Fixture UCC §9-102(a)(41) on a Fixture Filing UCC §9-102(a)(40), to guarantee the fulfillment of the obligation (Article I:10:1, U.S.C.A. Const.) to and in favor of the Secured Party (Creditor herein) and further agrees that Secured Party possesses the right (secured under the property proviso of U.S.C.A. Const. Amend V) as stated in this Security Agreement/Private agreement, re: Collateral as well as any and all other rights that Secured Party (Creditor herein) may have; without prejudice.

b.) **Payment;** Debtor will pay the indebtedness promptly when due, and will repay immediately all expenses, including reasonable attorney's fees and legal expenses, incurred by the Secured Party under this private agreement, together with interest at twenty-six percentum from the date of expenditure.

c.) **Financial condition;** Debtor won't bring and won't permit to be brought a proceeding in bankruptcy, receivership or similar proceeding concerned with voluntary or involuntary liquidation, reorganization or dissolution, nor will Debtor commit an act of bankruptcy or make an assignment for the benefit of Creditors, or become insolvent.

d.) **Information and documents;** Upon Secured Party's (Creditor herein) demand, Debtor will establish the correctness of information supplied and will execute agreements, assignments, or documents necessary or advisable to carry out the purposes of this Security Agreement/Private agreement between the parties.

e.) **Sale, lease or disposition;** Debtor will not sell, contract to sell, lease, encumber, or dispose of the Collateral pledged under this agreement until the obligation/indebtedness is discharged without the

(19)

Secured Party's consent.

f.) **Decrease in value of Collateral;** If in the opinion of the Secured Party, the Collateral has decreased in value, Debtor will either provide sufficient Collateral to satisfy the Secured Party (Creditor herein) or reduce the total indebtedness by an amount sufficient to satisfy the Secured Party, (Creditor herein).

g.) **Defense of title;** Debtor will appear and defend each action and proceeding which may effect the Secured Party's (Creditor herein) interest in the Collateral.

h.) **Appointment of Secured Party as attorney in fact;** Debtor appoints the Secured Party (Creditor herein) as Debtor's attorney in fact:   to do any act which Debtor is obligated by this "private agreement" to do; and, to exercise the rights that the Debtor may exercise under this agreement, to use the "Collateral" pledged as Debtor might use it, and to protect and preserve the Secured Party's (Creditor) rights under this "private agreement", and in the Collateral, Debtor agrees to hold harmless and indemnify the Secured Party, to the sum certain, Penal sum of ONE-HUNDRED MILLION "penal dollars" from all juristic acts, done for, or on behalf of Debtor, and furthermore, agrees to reimburse the Secured Party (Creditor herein) for all expenses which the Secured Party may incur while acting as Debtor's attorney in fact.

i.) **Secured Party's power over collateral;** Debtor authorizes Secured Party to perform every act which the Secured Party considers necessary and proper, to protect and preserve the Collateral and the Secured Party's (Creditor herein) priority interest in it; This authority includes, but is not limited to entering into extention, deposit, merger, or consolidation agreements, compromising disputes and repledging Collateral.

j.) **Assignment of Collateral and profits and proceeds;** Debtor assigns for the term of this (Private) agreement all of its rights to the use of the Collateral and to the use of profits and proceeds from the Collateral, including stock rights, rights to subscribe, dividends, stock dividends, stock splits, liquidating dividends, and interest; Debtor agrees to deliver to Secured Party (Creditor herein) any property which Debtor receives which represents an increase in the Collateral or profits or proceeds from the Collateral.

k.) **Waiver;** Debtor waives any right to require the Secured Party to proceed against another person, or to expend the Collateral or to pursue any other remedy which the Secured Party may have; Debtor waives presentment, demand for performance, notice of nonperformance, protest, notice of protest, and dishonor with respect to the Collateral; Debtor waives the right to require the Secured Party to preserve rights against prior parties to instruments or chattel paper.

l.) **Indorsements and guaranty;** If an indorser, surety, or guarantor dies or begins or permits to begin an act affecting its financial condition as described in paragraph 2(C), Debtor agrees to pay the indebtedness, or substitute an indorser, surety, or guarantor

acceptable to the Secured Party.

3.  DEFAULT AND REMEDIES:  Debtor agrees that if:  (a) a warranty or representation is false; (b) Debtor violates any covenant or agreement; or, (c) Secured Party (Creditor herein) in good-faith (UCC §9-102(a)(43) considers himself insecure because the prospect of payment is impaired, or the prospect of performance of an agreement or covenant is impaired or the value or priority of the security interest is impaired, the Secured Party (Creditor herein) has the rights and remedies provided by the Michigan Uniform Commercial Code and to the extent provided by law may:

a.)  **Expenses;** Incur expenses, including reasonable attorney's fees and legal expenses, to exercise any right or power under this agreement.

b.)  **Require additional collateral;** Require that the Debtor provide sufficient additional Collateral to satisfy the Secured Party.

c.)  **Performance of Debtor's obligations by bank;** Perform any obligation of the Debtor, and may make payments, purchases, or compromise any encumbrance, charge or lien, and [pay taxes] and expenses; if deemed necessary and proper/advisable.

d.)  **Set-off;** Exercise rights of set-off.

e.)  **Default;** Declare that a default has occurred, with or without "Notice", which is in the sole discretion of the Secured Party (Creditor herein). **Note:** Event of Default infra.

f.)  **Acceleration;** Declare that the entire indebtedness is immediately due and payable; with or without "Notice", which is in the sole discretion of the Secured Party (Creditor herein).

g.)  **Suit, disposition of Collateral and application of proceeds;** Secured Party (Creditor herein) may within his sole discretion, bring action UCC §1-201(1) and/or sue the Debtor (herein) or any other [PERSON] or [Individual 5 USC §552a(a)(2)] or any other [Entity] liable for the debt, Secured Party may retain the Collateral in satisfaction of the obligation; and may dispose of the Collateral; and may apply the proceeds of disposition, including provision for reasonable attorney's fees and legal expenses incurred by Secured Party.

h.)  **Tortious Acts by Fiduciary/de facto Government entities;** Secured Party may bring Tort action(s) for any distinct act of dominion contrary to Secured Party's interest or the obligations evidenced and secured hereunder this Security Agreement/"private" agreement between the parties herein, which shall **Not** be hindered by any [PERSON] or [legal entity] or another natural person outside this contractual relationship, which is based upon God's law; the old Common-law of America; U.S.C.A. Const. Art. III; and the Vienna Convention on Diplomatic Relations [23 UST 3227, TIAS 7502 (April 18, 1961) and U.S.C.A. Const. Art IV, sec. 1, §1; and, sec. 4, §1; and the property proviso of the V Amend. U.S.C.A. Const.] Take Notice:  UCC §1-201(25), (26),(27); Suit "shall issue" lex loci, lex fori country of Michigan (Republic) Art. IV, §4, U.S.C.A. Const., for any act(s) of Trespass;

Abuse of process; nuisance; conversion; or any other distinct acts of
dominion contrary to the Secured Party's interest, including (but not
limited to) breach of some other independent duty, such as a "fiduciary
relationship"; "shall" lie as actionable, and No good-faith end/or
qualified immunities will stand against this notice, for any abuse of
process summarized (in part) @ Restatement Torts, 2d, §682, and suit
for "injunctive relief" is not barred by Eleventh Amendment [124 F.3d.
1179; 44 U.S.P.Q. 2d. (BNA) 1144 (9th Cir. 1997)] and there is no
reason why damages, recoverable in tort actions might be understood as
withheld by the Legislature with respect to actions brought against
[PERSONS] under the proviso, Id. and burden of proof falls solely upon
any [PERSON] violating or attempting to violate or hinder the
obligations evidenced herein and hereunder ere same shall be held
inviolate under the Secured Party's sovereign authority; Full-faith end
credit shall be accorded same, nunc pro tunc; and express "Non-waiver
of extradition" from Our country of Michigan (Republic) Art. IV, §4,
U.S.C.A. Const. into [other jurisdiction] is again "Noticed" UCC
§1-201(25),(26),(27), with further Notice again that Secured Party has
withdrawn and withholds all power of attorney unto himself ab initio by
jure divino.

This Security Agreement (Private agreement) Secures the following, to wit:

(a)  Obligation of Debtor, priority, in favor of Secured Party as set forth
in the express, written private agreement(s), amount of said obligation is
Ten Billion United States Dollars, with One Hundred Million sum certain -
penal sum inclusive of same, to:  Hold Harmless and Indemnify (H.H.I.A.)
Secured Party in all actions upon a penal [statute], and action for the
recovery of a penalty given by [statute]; This "Penal Bond" with conditions
underwritten to wit:  (i) If a Collateral thing, other than the payment of
money, be done or forborn, the obligation for that action/event is void, but
the Debtor's obligation shall still remain in full force and effect; and,
(ii) In the "event" id. the Debtor retains the right to "set-off" against
those other [PERSONS], as Bond is conditioned upon forfeiture of penalty for
its breach, a fortiori, and Ignorantia legis neminem excusat; CAVEAT:  This
is a secondary obligation entered into for purpose of enforcing/securing the
primary obligation, and [PUBLIC OFFICIALS] are Not immune from suit when
they transcend their "lawful" authority under "Color of law", i.e., the
appearance or semblence, without the substance, of legal right...misuse of
power under Color of state law [citing:  AFL-CIO v. Woodward, 406 F.2d 137;
and 18 USC §§241, 242 quoted without prejudice]; This "shall" stand as
Constructive legal Notice/Public Notice:  UCC §1-201(25),(26),(27), no
further notice will be given other than summons & complaint, take notice;
Fiat; (b) Repayment of any amount as defined at 2(b) supra, and any amount
that Secured Party may advance; spend; or otherwise convey for the
maintenance; preservation; upkeep and the like of the Collateral; and, any
other expenditures that Secured Party may make under the proviso of this
Security Agreement/Private agreement in particular and for benefit of Debtor
in general; and, (c) All amounts owed now and/or under modification,
renewals, extensions, stock splits, and the like, of any of the included
obligations; and, (d) All other amounts owed Secured Party, both now owing
and Future goods UCC §2-105(2) including unborn young of animals UCC §9-105
(h) including progeny of the parties herein as defined @ UCC §7-202 and
their documents of title as defined @ UCC §1-201(15), under the laws of the

father lex loci, lex fori, country of Michigan (Republic) Art. IV, U.S.C.A. Const.
[Progeny as defined in the Bible] and same are under coverture at common-law, the
seed follows the father...Re judicata jure divion; Fiat; Future performance and
**Future value**, covenant at common-law ex contactu under State Seal of Michigan;
and **(e)** All indebtedness and liabilities, what-so-ever, owed Secured Party by
Debtor, both direct and/or indirect, absolute and/or contingent, due and as might
become due, now existing and hereafter arising, and however evidenced; and, **(f)**
Any other debts that may be owed Secured Party by Debtor and/or arising on occasion
in the future.

Debtor confirms and acknowledges the foregoing supra, and pledges, consents, and
agrees that all Collateral property is held in the possession of the Secured Party
including a certain Certificated Security (special property) with total assigns
in same, until Secured Party terminates this Security Agreement/Private agreement
between the parties, in writing; and **evidence** by his bona-fied signature and seal
over a Red L.S. accknowledging same as true and correct.

**Words Defined** (as used in this Security Agreement):

**All;** In this Security Agreement means everything one has, the whole number, toto,
totality, including both all sundry, everything, without restriction.

**Artificial [PERSON];** In this Security Agreement means a juristic person/ENS LEGIS,
an **artificial** being, as contrasted with a "natural person"...Applied to
corporations, considered as deriving their existence entirely from the law, such
as Debtor: _WILLIAM F. KEMP JR_ ©1973 and also any and all variations and
derivatives in the spelling of said name; except:
_William-Frederick: Kemp, Jr_ ©1973 **all rights reserved.**

**Authorized Representative;** In this Security Agreement the term **"authorized
representative"** means Secured Party, party of the second part, and real party in
interest _William-Frederick: Kemp Jr_ ©1973 authorized by Debtor for signing Debtor's
signature, without liability and without recourse.

**Claim;** In this Security Agreement the term **"claim"** means: **(1.)** Right of payment,
both when such is rendered in the form of a judgment; and for damages that are
liquidated; unliquidated; fixed; contingent; matured; un-matured; disputed;
undisputed; legal; equitable;; secured; unsecured; as well as rulings regarding
an equitable remedy for breach of performance, if such breach results in a right
of payment, both when equitable remedy is rendered into a form of judgment, and
for debts/obligations that are fixed, contingent, matured, unmatured, disputed,
undisputed, secured, unsecured; and, **(2)** Demanded as One's own, fee simple absolute,
any challenge of property, and ownership of a thing, that is unlawfully
held/withheld, [Restatement Torts 2d § 1:649, **any distinct act of dominion
inconsistent with owner's interest**, see: 121 Mich App. 424; 328 N.W. 2d. 653; 35
U.C.C. Rep. Serv. 927 (182) **noting:** Conversion §1:647 and §1:648; **and also see:**
Hill v. Henry, 65 N.J. Eq. 150; also a claim is to state, **see:** Doeglas v. Beasley,
40 Ala. 147; Prigg v. Pennsylvania, 16 Pet. 615; 10 L. ed. 1060. **(cited) without
prejudice and without recourse].**

**Conduit;** In this Security Agreement the term **"conduit"** signifies a means of
transmitting and distributing energy and the effects/produce of labor, such as
goods, and services, via the (Trade) name: _WILLIAM F. KEMP JR_ ©1973 also known
by any and all derivatives and variations in the spelling of, said name, except:

*William-Frederick: Kemp Jr* ©1973.

**Coverture;** In this Security Agreement the term "coverture" means, the seed follows the father in direct Paternal line by the course of the common-law heredity; that biological law which all living beings tend to repeat themselves in their lawful descendants...legal disability which exists at common-law from a "state of coverture" whereby the wife can Not own property free from the husband's claim or control, and filius familias is under coverture of the father as jure divino in bonis in toto as the father/Secured Party/Creditor herein is **"in possession"** of the field-warehouse receipts UCC §7-202 and document(s) of title UCC §1-201 (15), i.e., certificated securities/birth certificates of oldest child and YOUNGest child an by divine right & commercial action UCC §1-201 (1) secure coverture, and dissolve, cancel, and abate any and all statutory de facto claims as tainted with illegality, entitling the Secured Party to repudiate and enjoin same and take possession of goods UCC §9-105 (h) in accord UCC §7-102(1)(f) as a claim on general intangibles/Collateral UCC §9-106 and UCC §9-105(c), respectively warranting "any Court" (which "may be granted" limited - - express jurisdiction) for its exercise of its remedial powers, on behalf, and in favor of, Secured Party as any action to the contrary would be a distinct (ultra vires) act of dominion contrary to the Secured Party's interest amounting to common-law conversion.

**Creditor;** In this Security Agreement the term ""Creditor" means the Secured Party of Record *William-Frederick : Kemp, Jr* ©1973 , and the real party in this and all related matters.

**Debtor;** In this Security Agreement the term **"Debtor"** means *WILLIAM F. KEMP* ©1973 : all rights reserved, also known by any and all derivatives and variations in the spelling of said name; except: *William-Frederick: Kemp Jr* ©1973 all rights reserved.

**Default;** In this Security Agreement, **"Default"** means, Debtor non-performance of a duty or obligation arising within the proviso of this Security Agreement, specifically any **"event"** described herein this instrument under: Event of Default.

**Derivative;** In this Security Agreement, **"derivatives"** means, coming from another, taken from something preceding; secondary; that which **"has not"** the origin in itself, but obtains existence from something foregoing, and of a more primal and fundamental nature, anything derived from another.

**Ens Legis;** In this Security Agreement **"ens legis"** means a creature of the law, an **"artificial being"** (as contrasted with a natural person). i.e., PERSON as such a corporation considered as deriving its existence entirely from the law, created by law, and given certain legal rights and duties of a human being; a being, real or imaginary, necessary for de facto Government, for purposes of ascertaining those to whom the Fourteenth Amendment to the U.S. Constitution affords its protection, since that amendment expressly applies to "persons", also see: natural person; and definition(s) within Uniform Negotiable Instruments Law, §191; Uniform Sales Act, §76; and,

Uniform Warehouse Receipts Act, §58; re:  Person an imputed alter ego; nom-de-guerre; mask; dummy corporation, IDEM SONANS all capital letters; name used by de facto Government to extort a surety-ship; security for a loan.

<u>Hold Harmless Indemnity Agreement:</u> In this Security Agreement the term hold harmless indemnity agreement means:  A commercial/legal document wherein the TRADE-NAME(c)19  Debtor expressly pledges and covenants that:  (1) the Creditor/Secured Party is neither a surety nor an accommodation party for the Debtor; and (2) the Debtor holds harmless and indemnifies the Creditor/Secured Party herein, from and against any and <u>all</u> claims, legal actions, orders, warrants, judgments, demands, liabilities, losses, depositions, summonses, lawsuits, costs, fines, liens, levies, penalties, damages, interests, and expenses both issued in and associated with the Debtor's TRADE-NAME, with a "penal bond", incorporated by reference and attachment, pledged and secured to the <u>penal sum</u> certain of ONE HUNDRED MILLION DOLLARS terms of same are "authenticated" in accord H.J.R.-192 and UCC §§9-102(a)(73); 1-201(37) and §1-201(39) and security interest has attached with full force and effect, in favor of the Secured Party <u>evidenced</u> (in part) under this Security Agreement UCC §9-102(a)(72), with <u>all rights</u> reserved UCC §1-207 and UCC §1-103.6 without prejudice.

> Notice: Debtor "acknowledges delivery" of <u>all</u> such
> property - in which a security interest can be
> Perfected by possession, in accord UCC §8-301;
> and Secured Party has inherent common-law right
> to retain <u>all</u> possession of <u>all</u> such property
> until the obligation is satisfied and acknowledged
> in writing by the Secured Party...UCC §1-103.6

<u>Juristic Person:</u> In this Security Agreement the term "juristic person", means an abstract legal entity [ens legis] such as a corporation, e.g., 26 USC §7701(a)(1),(3),(30)(C); created by construct of law and considered as possessing certain legal rights and duties of a human being; an imaginary entity such as Debtor, i.e. *WILLIAM F. KEMP JR.* ©1973, which on the basis of legal reasoning is "legally" treated as a human being for the purpose of conducting commercial activity for the benefit of a biological, living, breathing <u>natural</u> Christian <u>man</u>, such as Secured Party. "From the earliest of times the law has enforced rights and extracted liabilities by utilizing a corporate concept - by recognizing, that is "juristic persons" other than human beings...The alter ego theories by which this mode of legal operation has developed has been justified, qualified, and codified [Note: <u>Penhallow</u> v. <u>Doane's Administrators</u>, 3 U.S. 54; 1 L.Ed. 57; 3 Dall. 54 defining governments succinctly:  Governments are corporations, "artificial PERSONS", an abstraction, a creature of the mind only...a Government can interface only with other artificial persons/legal fictions; e.g., "something assumed" in law to be fact, "irrespective of the truth" or accuracy of that assumption]

<u>Land:</u> In this Security Agreement the term "land" means any and <u>all</u> ground, soil and earth whatsoever, including pastures, fields, meadows, woods, moors, waters, marshes, rock, sand, and the like.

<u>Legal Entity:</u> In this Security Agreement the term "legal entity" means an entity other than a natural person, with sufficient existence in legal

contemplation that said entity can function "legally" to sue and be sued, and make certain decisions through agents.

Liability; In this Security Agreement the term "liability" means every kind of legal obligation, responsibility, and duty...Also: the state of being bound and obligated in law for doing, paying a debt, fulfilling an obligation, rendering committed specific performance, and the like; see: [Mayfield v. First National Bank of Chattanooga, Tenn. 137 F.2d. 1013 - 1019 and also: 129 A. 643-649; 43 L.R.A. N.S. 1095; and 196 N.Y.S. 539-541; 119 misc. 833]

Natural Christian Man of God: In this Security Agreement and related documents, the term "natural Christian man of God" means the living breathing, flesh-and-blood man, i.e., the Secured Party. *William Frederick: Kemp Jr.* (c)1973 Autograph common-law Copyright (c)1973 with reservation of all rights @ UCC §1-207 and UCC §1-103.6 without prejudice; A sentient, living being as distinguished from an artificial legal construct, ens legis, PERSON, VESSEL, i.e., juristic person, by construct of law...Every "man" is independent of all laws, except those prescribed by nature and nature's God, he is Not bound by any institution formed by his fellow men, without his consent: CRUCEN v. NEALE, 2 N.C. 338 (1796); 2 S.E. 70; also see: Milvaine v. Coxe's Lessee, 8 U.S. 589 (1808); and Kawananakoa v. Polyblank, 205 U.S. 349-353; 27 S.Ct. 526-527; 51 L.ed. 834 (1907); and Hale v. Henkel 201 U.S. 43; [cited]: without prejudice, UCC §3-601.3 and UCC §1-207.

Natural person; In this Security Agreement the term "natural person" means a living, breathing, flesh-and-blood man as distinguished from an artificial person, juristic person, U.S. PERSON, and the like.

Non-obstante; In this Security Agreement (and related documents) the term "non-obstante" means word anciently used in public and private instruments with the intent of precluding, in advance, any interpretation other than that meant, contrary to certain declared objects or purpose, e.g., let yes be yes and no be no Matthew 5:

Private Agreement; In this Security Agreement, the term "private agreement" means the written express terms pledged in covenant and written in this Security Agreement/Private agreement between the parties, exclusive any party outside the private agreement, e.g., other jurisdiction, person, Agency, or party, other than those parties herein expressly acknowledged in writing/Security Agreement.

Rents wages salaries and other income from whatever source derived; In this Security Agreement the term "rents wages salaries and other income from whatever source derived" means all rents wages salaries and other income from whatever source derived being owed and becoming owed for the benefit of Debtor.

Secured party; In this Security Agreement the term "secured party" means (c) a living sentient being as distinguished from a juristic person created by construct of law.

**Security agreement:** In this Security Agreement the term "security agreement" means this security agreement No. 2003000069-4, as this Security Agreement may be amended and modified by agreement of the parties together with all attachments, exhibits, documents, endorsements, and schedules attached hereto.

**Sentient, living being:** In this Security Agreement the term "sentient living being" means the secured party i.e. *William-Frederick Kemp Jr.* ©️ 1973, a living breathing flesh-and-blood man as distinguished from an abstract legal construct such as an artificial entity, juristic person, corporation, partnership, association, and the like.

**Signature:** See UCC 3 401 (what is considered signature).

**Signed:** See UCC 1-201(39) (what is considered signed).

**Trade name:** In this Security Agreement the term "trade name" means the following juristic person *WILLIAM F. KEMP JR* ©️ 1973 as well as any and all derivatives and variations in the spelling of said name respectively except *William-Frederick: Kemp JR* ©️ 1973. respectively.

**Transmitting utility:** In this Security Agreement the term "transmitting utility" means a conduit e.g., the Debtor i.e., *WILLIAM F. KEMP JR* ©️ 1973.

**UCC:** In this Security Agreement the term "UCC" means Uniform Commercial Code.

**Collateral:** In this Security Agreement the term "collateral" means any and all items of property of Debtor now owned and hereafter acquired now existing and hereafter arising and wherever located (a) referenced within any of the following categories --i.e., all motor vehicles, aircraft, vessels, ship trademarks, copyrights, patents, consumer goods, firearms, farm products, inventory equipment, money investment, property, commercial tort claims, letters of credit, letter - of - credit rights, chattel paper, electronic chattel paper, tangible chattel paper certificates, securities, uncertificated securities, promissory notes, payment intangibles, software, health - care - insurance receivable instruments, deposit accounts, accounts, documents, livestock, real estate and real property - including all building(s), structures, fixtures, and appurtenances situated therein, as well as affixed thereto - fixtures, manufactured homes, timber, crops, and as-extracted collateral, i.e., all oil, gas and other minerals as well as any and all accounts arising from the sale of these substances both at wellhead and minehead, (b) Listed below (c) described identified within any document of title certificate from and the like a photocopy of which has been appended with this Security Agreement attached hereto made fully part hereof and included herein by reference (d) described identified in attachment Sheet No. 2003195983-4, attached hereto made fully part hereof and included herein by reference (e) described identified in Private Collateral List No. 010203-44866 - PCL. made fully part hereof and included herein by reference (f) described classified within any of the following (i) accessions increases and additions replacements of and substitutions for any of the property described in this collateral section (ii) products produce and proceeds of any of the property described in this Collateral section (iii) accounts general intangibles instruments Monies

27

payments and contract rights and all other rights arising out of sale, lease and other disposition of any of the property described in this Collateral section (iv) including insurance bond general intangibles and accounts proceeds from the sale destruction loss and other disposition of any of the property described in this Collateral section, and (v) records and data involving any of the property described in this Collateral section such as in the form of a writing, photograph, microfilm, microfiche, tape, electronic media, and the like together with all of Debtor's right title and interest in computer software and hardware required for utilizing, creating, maintaining, and processing any such records and data in any electronic media. Each foregoing separate item of property referenced described, identified, classified within any of six (6) preceding paragraphs, i.e., "(a)", "(b)", "(c)", "(d)", "(e)", and "(f)", in Collateral section secures the entire obligation amount of indebtedness, i.e., Ten Billion United States Dollars ($10,000,000,000.00).

### Paragraph "(b)" list

1.     The   trade-name,   mark,   and   trade-mark   of   Debtor,   i.e., _WILLIAM F. KEMP Jr_ © 1973, and any and all other assemblages of letters and derivatives variations in the spelling of said name used with the intent of identifying referencing the Debtor, _WILLIAM F. KEMP Jr_ © 1973, all rights reserved.

2.     Any   and   every   alleged   birth   document   record,   re: _WILLIAM FREDERICK KEMP_ © 1973, such as THE STATE OF MICHIGAN, BUREAU OF VITAL STATISTICS, MCS 87-282, CITY OF LANSING, CERTIFICATION OF VITAL RECORD, FILE NO. _1201910-49866 (121)_, ISSUED _11-25-1953_, i.e., any and every CERTIFICATE OF BIRTH, STANDARD CERTIFICATE OF BIRTH, CERTIFICATE OF LIVE BIRTH, STANDARD CERTIFICATE OF LIVE BIRTH, NOTIFICATION OF BIRTH REGISTRATION, NOTIFICATION REGISTRATION OF BIRTH, CERTIFICATION OF REGISTRATION OF BIRTH, CERTIFICATE OF BIRTH REGISTRATION, and any otherwise entitled birth document record issued at any of the following levels, hospital, city, county, federal, other allegedly involving, concerning, binding, derived from etc. the name consisting of any assemblage of letters regarded as identifying referencing debtor, i.e., _WILLIAM FREDERICK KEMP_ © 1973, for any reason whatsoever.

3.   Debtor's Social Security Account Number _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_ and all related documents instruments and endorsements front and back, except the paper card-issued by Social Security Administration and bearing Social Security Account Number _364645967_ on the obverse thereof.

4.   All related accounts, trusts, documents, instruments, and endorsements front and back; re:     Debtor's Social Security Account Number _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_.

5.   All Social Security income from Social Security Account Number _Terminated contract._

6.   Account Number _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_.

7.   Case Number _USCOA Sixth Cir. @ 05-2339 et. seq._

8.   All land and real property.

9.   All buildings, structures, and fixtures, and the appurtenances situated thereon and affixed thereto.

10.   All documents involving all real property in which Debtor has an interest including all buildings, structures, fixtures, and appurtenances situated on and affixed thereto.

11.   All motor vehicles and wheeled conveyances of any kind, motorized and otherwise, in which Debtor has an interest.

12.   All vessels and all equipment, accoutrements, baggage and cargo affixed thereto, pertaining thereto stowed therein and the like including but not limited by all motors, engines, ancillary equipment accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants and fuels, and fuel additives.

13.   All aircraft and all equipment accoutrements, baggage and cargo affixed thereto, pertaining thereto, stowed therein and the like, including but not limited by all motors, engines, ancillary equipment, accessories, parts, tools, instruments, electronic equipment, navigation aids, service equipment, lubricants, fuels, and fuel additives.

14.   All deposit accounts, i.e., all demand time savings passbooks and other accounts maintained with a bank of any kind whatsoever.

15.   All credit card accounts.

16.   All charge accounts.

17.   All brokerage accounts, i.e., all stock, bond, mutual fund, and money-market accounts, and the like.

18.   All retirement plan accounts, Individual Retirement accounts, 401(k)'s, pension plans, and the like; specifically 401(k) account # _____TBD_____; and Union Pension Plan # _____TBD/NA_____.

19.   All precious metals and bullion, and any storage box and receptacle within which such is stored.

20.   All stockpiles, collections, build ups, amassments, and accumulations, however small of Federal Reserve Notes, gold certificates, and silver certificates, and all other types an kinds of cash, coin, currency, and money (delivered into possession of Secured Party as of date of this Security Agreement as described in subparagraph (II) of second paragraph on page 1 of this Security Agreement).

21.   All stocks, bonds, drafts, future insurance policies, investment securities, notes, options, puts, calls, warrants, securities, and benefits from trust and the like.

22.   All bank safety deposit boxes, the contents therein, and the box numbers associated therewith, and the keys, combinations, security codes, passwords, and the like associated therewith.

(29)

23.  All credit of Debtor.

24.  All proceeds products accounts and fixtures from crops, mine heads, well heads, etc.

25.  All rents, wages, salaries, and other income, from whatever source derived.

26.  All land, mineral, water, and air rights.

27.  All documents, records, and certificates, re:  cottages, cabins, houses, and buildings in which Debtor has an interest.

28.  All inventory in any source.

29.  All machinery both farm and industrial.

30.  Trailers, mobile homes, and recreational vehicles, and house cargo, and travel trailers and all equipment accoutrements, baggage and cargo affixed thereto, pertaining thereto, stowed therein, and in any manner attached thereto, including but not limited by all ancillary equipment, accessories, parts, service equipment, lubricants, fuels, and fuel additives.

31.  All livestock and animals and all things required for the care, feeding, use, transportation, and husbandry thereof.

32.  All computers, computer-related equipment and accessories, electronically stored files, and data telephones, electronic equipment, and office equipment, and machines.

33.  All visual reproductions systems, aural reproduction systems, motion pictures films, video tapes, sound tracks, compact discs, phonograph records film, video, and aural production equipment, cameras, projectors, and musical instruments.

34.  All booklets, pamphlets, treatises, essays, treatments, monographs, stories, written material, libraries, plays, screenplays, lyrics, songs, and music.

35.  All financial books and records.

36.  All "proprietary data" and technology inventions, royalties, and good will.

37.  All scholastic degrees, diplomas, honors, awards, and meritorious citations.

38.  All records, diaries, journals, photographs, negatives, transparencies, images, video footage, film footage, drawings, sound records, audio tapes, video tapes, and computer production and storage facility of any kind.

39.  All fingerprints, footprints, palm prints, thumbprints, RNA materials, DNA materials, blood, and blood fractions, biopsies, surgically removed

30

tissue, body parts, organs, hair, teeth, nails, semen, urine, other bodily fluids, and matter, voice print, retinal image, and the description thereof, and all other corporal identification factors, and said factors, physical, counterparts in any form, and all records, record numbers, and information pertaining thereto, re: Debtor.

40. All biometrics data records, information, and processes not elsewhere described the use thereof and the use of the information contained therein pertaining thereto and otherwise.

41. All rights for requesting, refusing, authorizing, and disallowing the administration of any drug, manipulation, material process, procedure, ray, and wave, that Secured Party considers might alter the state of the body, mind, spirit, will, and any other aspect of being, by any means, method, and process whatsoever.

42. All rights for obtaining, using, requesting, refusing, and authorizing the administration of any food, beverage, nourishment, water, and the like, that might be infused into, such as by injection, swallowing, and the like into the body, and any substance that might effect the body in any matter whatsoever.

43. All keys, locks, lock combinations, encryption codes, safes, and secured places, and security devices, security programs, and all software, machinery, and devices associated therewith and related thereto.

44. All rights for accessing and using utilities upon payment of the same unit costs as the comparable units of usage offered for the benefit of most-favored customers, including cabal, electricity, garbage, gas, internet, satellite, sewer, telephone, water, Internet, e-mail, and other methods of communication, energy transmission, and food and water distribution; (without prejudice).

45. All rights for bartering, buying contracting, selling, and trading ideas, products, services, and work.

46. All rights for creating, inventing, adopting, utilizing, and promulgating any system and means of currency, money, medium of exchange coinage, barter, economic exchange, bookkeeping, record-keeping, and the like.

47. All rights for using all free, rented, leased, fixed, and mobile domiciles, as if each were a permanent domicile, free from requirement for applying for, and otherwise securing, any government license, permission, permit, and otherwise, and free from entry, intrusion, and surveillance, by any means, regardless of duration of lease period, so long as any required lease is currently paid, but wherein the alternative, a subsequent three-day grace period has not expired.

48. All rights for managing, maneuvering, directing, guiding, and traveling in any form of motorized conveyance whatsoever, e.g. automobile, truck, motorcycle, and the like, without the obligation for obtaining, any government license, permit, certificate, permission, and the like, of any kind whatsoever; (without prejudice).

49. All rights for marrying procreating children, and rearing, educating, training, guiding, and spiritually enlightening any such children, without any requirement for applying for, and without the obligation for obtaining any government-issued license, number, serial number, permit, certificate, permission, and the like, of any kind whatsoever; all progeny are under coverture of father by jure divino, without prejudice and res judicata under the laws of the fathers domicile, lex loci, lex fori, country of Michigan (Republic) Art. IV, §4, U.S.C.A. Const., at common-law.

50. All rights for buying, selling, trading, gathering, growing, hunting, raising, angling, and trapping food, fiber, and raw materials for shelter, clothing, and survival.

51. All rights for exercising and enjoying freedom of religion, worship, use of sacraments, spiritual practice, and expression without any abridgement of freedom of speech, publishing, peaceable assembly, and petitioning Government for redress of grievances, and also petitioning any military force of the United States, as well as any other group, agency, and organization, and otherwise for physical protection from tyrants involving the safety and integrity of the person, as well as property, of Secured Party from any source, both "public" and "private."

52. All rights for creating, preserving, and maintaining inviolable spiritual sanctuary and receiving into same any and all parties requesting safety, shelter, and sanctuary.

53. All rights involving privacy and security in person and property, including all rights such as the safety and security of all household members, sanctuary dwellers, and guests, and all papers and affects of Debtor and all household and sanctuary dwellers and guests, against governmental, quasi-governmental, and private intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, and warrant, except with proof of superior claim duly filed in the UCC filing office by any such intruding party in the private capacity of said intruding party, notwithstanding whatever purported authority, warrant, order, law, pretense issued under color of law may be promulgated as the authority for any such intrusion, detainer, entry, seizure, search, surveillance, trespass, assault, summons, warrant, and the like.

54. All claims of ownership and certificates of title involving corporeal and incorporeal hereditaments, hereditary succession, and all innate aspects of being, i.e., mind, body, soul, free will, faculties, and self.

55. All names used and all corporations sole executed and filed, as well as might be executed and filed, under said names.

56. All intellectual property, including all speaking, writing, and other media.

57. All signatures and autographs.

58. All present and future retirement incomes, and rights in such incomes, deriving from any of Debtor's accounts, deposit accounts, and otherwise.

(32)

59. All present and future medical and healthcare rights, and rights owned through survivorship, from any of Debtor's accounts, deposit accounts, and otherwise.

60. All applications, filings, correspondence, information, identifying marks, images, licenses, travel documents, materials, permits, registrations, and records, and records numbers held by any entity, for any purpose, however acquired, as well as the analyses and uses thereof, and any use of information and images contained therein, regardless of creator, method, location, process, and storage form, including all processed algorithms analyzing, classifying, comparing, compressing, displaying, identifying, processing, storing, and transmitting said applications, filing, correspondence, information, identifying marks, images, licenses, travel documents, materials, permits, registrations, records, and records numbers, and the like.

61. All library cards.

62. All accounts, deposits, escrow accounts, lotteries, overpayments, prepayments, prizes, rebates, refuses, returns, claimed and unclaimed fuels, and all records and records numbers, correspondence, and information pertaining thereto, as well as all such items construed as being derived therefrom.

63. All drugs, herbs, medicine, medical supplies, cultivated plants, growing plants, inventory, ancillary equipment, supplies, propagating plants, and seeds, and all related storage facilities and supplies.

64. All products of agriculture, and all equipment, inventories, supplies, contracts, and accoutrements involved in the planting, tilling, harvesting, processing, preservation, and storage of all products of agriculture.

65. All farms, lawn, and irrigation equipment, and all accessories, attachments, hand-tools, implements, service equipment, parts, and supplies associated therewith and related thereto.

66. All fuel, fuel tanks, and containers, and all involved and related delivery and transfer systems.

67. All metal-working, woodworking, and other such machinery, and all ancillary equipment, accessories, consumables, power tools, hand tools, inventories, storage cabinets, toolboxes, work benches, shops, and facilities.

68. All camping, fishing, hunting, and sporting equipment, and all special clothing, materials, supplies, and baggage related thereto.

69. All rifles, guns, bows, and crossbows and related accessories, and the ammunition, projectiles, and integral components thereof.

70. All radios, televisions, communication equipment, receivers, and all electronic equipment whatsoever whether household or mobile.

71. All power-generating machines, devices, and the like, and all storage, conditioning, control, distribution, wiring, and ancillary equipment as might pertain thereto in any manner.

72. All computers and computer systems and the information contained therein, as well as ancillary equipment, printers, and data compression and encryption devices and processes.

73. All office and engineering equipment, furniture, ancillary equipment, drawings, tools, electronic and paper files, and items associated therewith and related thereto.

74. All water wells and well-drilling equipment, and all ancillary equipment, chemicals, tools, and supplies.

75. All shipping, storing, and cargo containers, and all chasis, truck trailers, vans, and the contents thereof, both on-site and in-transit, as well as in storage anywhere.

76. All building materials and prefabricated buildings, and all components, and materials pertaining thereto, both before and during manufacture, transportation, storage, building, erection, and vacancy while awaiting occupancy thereof.

77. All communications and data, and the methods, devices, and forms of information storage and retrieval, and the products of any such stored information.

78. All books, drawings, magazines, manuals and reference materials regardless of physical form.

79. All antiques, artwork, paintings, sculptures, etchings, photographic art, lithographs, and all frames and mounts pertaining thereto, affixed thereon, and otherwise.

80. All food, and all devices, tools, equipment, vehicles, machines, and related accoutrements involved in food preservation, preparation, growth transport, and storage.

81. All construction machinery and equipment and all ancillary equipment, supplies, materials, fuels, and fuel additives, supplies, materials, and service equipment pertaining therto.

82. All medical, dental, optical, prescription, and insurance records, records numbers, and information contained in any such records pertaining thereto.

83. All inheritances obtained, as well as all inheritances as might be received.

84. All wardrobe and toiletries.

85. All watches, jewelry, precious jewels, and semi-precious stones, and any mounting attached thereto, and all rings, except wedding rings, and all

storage boxes within which any of the foregoing items are stored.

86.    All radios, televisions, household goods and appliances, linen, furniture, kitchen utensils, cutlery, tableware, and pottery.

87.   All ownership, equity property, and rights in property now owned, held, and hereafter acquired, in all businesses, corporations, companies, trusts, partnerships, limited partnerships, organizations, proprietorships, and other like entities, and all books and records pertaining thereto, all income obtained therefrom, and all accessories, accounts, equipment, information, inventory, money, parts, spare parts, and computer software pertaining thereto.

88.   All packages, parcels, envelopes, and labels of any kind whatsoever that are addressed for the benefit of Debtor, both when received and when not received by Debtor.

89.   All telephone, fax, and pager numbers.

90.   All e-mail addresses, Internet URL's, Internet Web sites, Internet domain names, and Internet Service Provider accounts.

91.   All item of property not specifically described/named/specified/listed by make, model, serial number, account number, etc. is expressly herewith included as an item of property pledged by Debtor as collateral for securing Debtor's contractual obligation in favor of Secured Party.

This Security Agreement expressly herewith includes and encompasses all rights, legal title, equitable title, and interest in property described in this Collateral section, both when now owned and when hereafter acquired, now existing and such as might hereafter arise, and wherever located.

**Hold Harmless and Indemnified:** In this Security Agreement, Secured Party is held harmless and indemnified by Debtor in strict accordance with Hold Harmless and Indemnity Agreement No. 052339 - HHIA, attached hereto and included herein by reference.

**Authorized Representative:** Debtor hereby appoints Secured Party as Debtor's Authorized Representative and authorizes Secured Party to do the following: (a) sign, without liability, Debtor's signature in all commercial activity between Debtor and any other juristic person, where such signature is requested, and if required, for the purpose of authenticating the writing; (b) regarding any deposit account of any kind maintained in the name of Debtor, and likewise maintained in/under the Social Security Account Number of Debtor, with any bank, without further consent of Debtor, and without liability:  (i) to originate instructions for the deposit-account bank and direct the disposition of funds in any such deposit account by acting as sole and exclusive signatory on said deposit account; (ii) to receive, open and close all written communication, correspondence, and mail concerning any such deposit account sent by any such deposit-account bank; (iii) to compose, finalize, authenticate, and send all written communication, correspondence, and mail concerning any such deposit account with any such deposit-account bank; and (iv) to maintain exclusive possession of any and all debit cards, ATM (Automated Teller Machine) cards, and other similar

(35)

types of cards, as well as all checkbooks, savings books, passbooks, and other types of account books, re:  any and all such deposit accounts of any kind whatsoever maintained with any bank; (c) to demand, collect, receive, accept receipt for, and recover all sums of money and other property which are now, and may hereafter become due, owing, and payable in favor of the Debtor; (d) to execute, sign, and endorse any and all claims, instruments, receipts, checks, drafts, and warrants issued for, and make payable in favor of, Debtor; (e) to settle and compromise any and all claims, now existing and as might hereafter arise, against Debtor, and against any item of Collateral; and (f) to file any claims, take any action, and institute and participate in any proceedings, both in the name of Debtor and under the distinctive appellation of Secured Party, as well as otherwise which, in the sole discretion of Secured Party, may be deemed necessary and advisable. Secured Party may also receive, open, and dispose of mail indicating any alleged address of Debtor, and change any address concerning which mail and payments should be sent.  This authorization is given as security for the indebtedness, and the authority hereby conferred is irrevocable and remains in full force an effect until renounced, in writing, and signed by Secured Party.

**Perfection of Security Interest:** (a) Debtor authorizes Secured Party's filing of a financing statement, and continuation statements as needed, describing Collateral, as well as any and all agricultural liens and other statutory liens against Debtor held by Secured Party; (b) Debtor also authorizes execution of such financing statements by Secured Party, and agrees that Debtor will take all other such actions reasonably requested by Secured Party, for perfecting and continuing Secured Party's security interest in Collateral, and also consents and agrees as follows:  (i) Secured Party may at any time, without further authorization from Debtor, file carbon, photographic, and other types of reproductions of any herein-authorized financing statement, as well as this Security Agreement for use as a financing statement; and (ii) Secured Party is neither responsible for taking any steps necessary for the preservation of any third-party rights in Collateral, nor for protecting, preserving, maintaining, and the like any security interest granted any third party in Collateral.

**Event of Default:** Any event listed within any category below constitutes default under this Security Agreement:  (a) Insolvency of Debtor, appointment of a receiver for any part of Debtor's property, any assignment for the benefit of a third-party creditor, as well as commencement of any proceeding under any set of laws, e.g., bankruptcy law, by Debtor, as well as against Debtor:  (b) Commencement of foreclosure by judicial proceeding, self-help, repossession, as well as any other method by any third-party creditor of Debtor against any item of Collateral that is the subject of this Security Agreement; (c) Attachment, execution, lien, levy, and the like concerning any item of Collateral; (d) Failure of compliance of Debtor with any term, obligation, covenant, condition, and the like, contained in (i) the written, express Private Security Agreement No. _2003000669-4_  — SA dated the twenty sixth day of ninth month in the Year of Our Lord, One-thousand Nine-Hundred Ninety-Three between Debtor, i.e., _WILLIAM F. KEMP JR_ © 1973, also known by any and all derivatives and variations in the spelling (ii) this Security Agreement, and (iii) any related document, as well as in any other agreement/contract between Debtor and Secured Party.

**Rights and Remedies in Event of Default:** In event of default under this Security Agreement, as well as under all related documents and other agreements and contracts between Secured Party and Debtor, as well anytime thereafter, Secured Party shall have all rights of a Secured Party in commerce, re: Debtor. In addition, and without limitation, Secured Party may exercise any number of the following rights and remedies:

**Sell Collateral:** Secured Party possesses full power to sell, lease, transfer, and otherwise deal with Collateral and proceeds both in the name of Debtor and under the distinctive appellation of Secured Party. Secured Party may sell Collateral in any manner and at any place, such as at public auction, private sale, and otherwise without further notice. All expenses involving the disposition of Collateral, including, without limitation, the expenses of holding, insuring, preparing for sale, and selling Collateral, become part of the indebtedness secured by this Security Agreement and are payable on demand.

**Appoint Receiver:** In accordance with the requirements and options permitted by applicable law, Secured Party possesses the following rights and remedies regarding appointment of a receiver:  (a) Secured Party may have a receiver appointed as a matter of right; (b) the receiver may be an employee of Secured Party and may serve without bond; and (c) all fees of any attorney or receiver, become part of the indebtedness secured by this Security Agreement and are payable on demand, with interest at the note rate, unless payment of interest at that rate is not permitted by applicable law, in which event such unpaid fees shall bear interest at the highest rate permitted by applicable law from date incurred until repaid.

**Collect Revenues, Apply Accounts:** Secured Party, both in Secured Party's personal capacity and through receiver, may collect the payments, rents, incomes, and revenues from Collateral. Secured Party may at any time, at the sole discretion of Secured Party, transfer any Collateral under the distinctive appellation of Secured Party, as well as into the name of any nominee of Secured Party and receive the payments, rents, income, and revenues therefrom, and may hold same as security for the indebtedness, apply payments in favor of the indebtedness in any order of priority that Secured Party may determine. Insofar as Collateral consists of accounts, general intangibles, deposit accounts, insurance policies, instruments, chattel paper, choses in action, and any similar property, Security Party may demand, collect, receive, execute receipt for, settle, compromise, adjust, sue for, foreclose, and realize on Collateral as Secured Party may determine, concerning both indebtedness and Collateral, whenever due.

**Obtain Deficiency:** If Secured Party decides to sell any item of Collateral, Secured Party may obtain judgement against Debtor for any deficiencies remaining on the indebtedness the Secured Party might be owed after application of all amounts received from the exercise of rights provided in this Security Agreement. Debtor is liable for a deficiency even if the transaction described in this subsection is a sale of accounts, and likewise, of chattel paper.

**Cumulative Remedies:** All of Secured Party's rights and remedies, as evidenced by this Security agreement, as well as by any related documents and by any other writing, are cumulative and may be experienced both

37

singularly and concurrently. Pursuit by Secured Party of any remedy does not exclude it to any other remedy, and making expenditures and taking action for performing an obligation of Debtor under this Security Agreement, after Debtor's failure of performance, does not affect Secured Party's right to declare a default and exercise the remedies therefor.

**Other Rights and Remedies:** Secured Party possesses all rights and remedies of a secured creditor under the Uniform Commercial Code, as may be amended upon agreement between the parties. In addition, Secured Party possesses, and may exercise, any and all other rights and remedies available by law, in equity, and otherwise.

**Rules of Construction:** In this Security Agreement: (a) neither the use of nor the referencing of the term "proceeds" authorizes any sale, transfer, or other disposition, and the like of Collateral by Debtor; (b) the words "include," "includes," and "including" are not limiting; (c) the word "all" includes "any" and the word "any" includes "all"; (d) the word "or" is not exclusive; and (e) words and terms (i) in the singular number include the plural, and in the plural, the singular; and (ii) in the masculine gender include both the feminine and neuter.

**Miscellaneous Provisions:** The following miscellaneous provisions are a part of this Security Agreement:

**Amendments:** This Security Agreement, together with all related documents and endorsements, constitutes the entire understanding and agreement of the parties re the matters set forth in this Security Agreement. This Security Agreement may neither be changed nor modified in any manner whatsoever unless said change/modification is agreed upon by Secured Party in writing and signed by Debtor and Secured Party.

**Further Assurances:** Upon reasonable request by Secured Party, Debtor consents and agrees that Debtor will execute any further documents and take any further actions requested by Secured Party that augment any of the following: (a) evidencing the security interest granted herein; (b) perfecting the security interest granted herein; (c) maintaining first priority of the secured interest granted herein; (d) effectuating rights herein granted Security Party by Debtor.

**Severability:** In the event that a Court of original and general jurisdiction at common law, such as an Article III Court of justice arising under Constitution of the United States of America, 1787, with the Bill of Rights of 1791, as lawfully amended by the qualified Electors of the Several States on this American Union, and laws of the de jure United States of America, and such as a court of justice in accordance with the course of the common law arising under the Constitution of the Michigan Republic, as amended by the qualified Electors of said Michigan Republic and the laws by the de jure Michigan, judicially determines that any part of this Security Agreement, including any amendment, addendum, revision, and the like is unacceptable for any reason, such as on the basis of being unlawful, invalid, void, unenforceable, and the like, such provision is thereby severed from this Security Agreement, but every remaining provision continues in full force and effect and may not be affected by such determination. If feasible, any such offending provision is deemed modified

for inclusion within the limits of enforceability and validity. In event the offending provision cannot be so modified, said offending provision is thereby stricken and all other provisions of this Security Agreement in all other respects remain valid and enforceable by Secured Party.

**Waiver:** Neither Secured Party's actions, nor Secured Party's omissions, may be construed as a waiver of any right under this Security Agreement unless specifically so waived in writing and signed by Secured Party. Neither delay nor omission on the part of Secured Party in exercising any right may operate as a waiver of any other right. A waiver by Secured Party of a provision of this Security Agreement neither prejudices, nor constitutes a waiver of, Secured Party's right for otherwise demanding strict compliance with that provision, and any other provision, of this Security Agreement. Neither prior by Secured Party, nor any course of dealing between Secured Party and Debtor, may constitute a waiver of any of Secured Party's rights, nor of any debtor's obligations re any future transactions. Whenever the consent of Secured Party is required under this Security Agreement, the granting of such consent by Secured Party in any instance may not be construed as consulting continuing consent for subsequent instances where such consent is required, and in all cases such consent may be granted and withheld in the sole discretion of Secured Party.

This Security Agreement is not dischargeable in bankruptcy court. Secured Party is holder in due course of all negotiable instruments referencing, bearing upon, and deriving from all property and Collateral referenced herein. All Collateral is exempt from levy and third-party lien.

This Security Agreement secures any and all indebtedness and liability whatsoever that debtor owes in favor of Secured Party, both direct and indirect, absolute and contingent, due and as might become due, now existing and hereafter arising, and however evidenced.

This Security Agreement also secures any other debt that may be owed by debtor, as arising, upon occasion, for the benefit of Secured Party.

Debtor acknowledged, consents, and agrees that Debtor is bound by all terms and conditions as set forth herein.



This Security Agreement No. *2003000669-4* — S.A. is dated the *Twenty-sixth* day of *November* in the year of Our Lord Jesus, the Christ; Nineteen hundred and *seventy-three*.

©1973

Party of the first part, Debtor: *WILLIAM FREDERICK KEMP JR.*

UCC §§1-201(39), 3-401(2)

I.D. # *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*

Notice:  Secured Party accepts Debtor's signature in accord (B.A.), UCC §§ 1-201(39), 3-401(2), and accepts for value (B.A.) this Security Agreement/ Private Agreement between the parties in accord UCC §10-104 and House Joint Resolution-192 (HJR-192) of June 5, 1933, all Collateral is accepted for value (B.A.), same is exempt from levy and third party lien, Secured Party accepts all further/future signatures/indorsements for value (front & back), this document is executed in accord the laws of the United States, executed without the United States pursuant 28 USC §1746.(1), with the Secured Party's signature evidence of acceptance of the Terms of Agreement, and ratification, and acknowledgment of same...let this Noble union be and hereby is consummated.

Party of the Second Part, Creditor: *William Frederick : Kemp Jr* ©1973
and Secured Party of Record, nunc pro tunc. *2003000669-4* et.seq.

genuine UCC §1-201(18) autograph signature evidence (B.A.) acceptance of this S.A. for value, Secured Party reserves all rights without prejudice UCC §1-207 and §1-103.6 as part of his foreign estate 26 USC §7701 (a)(31) Michigan Republic.

**BARBARA S. LANE**
NOTARY PUBLIC, CHIPPEWA CO., MI
MY COMMISSION EXPIRES
*11-08-11*

Certified
L.S.
True Correct
COPY

*Barbara S Lane*
Notary Agent *MI./U.S.A.*

*3-27-06*
Date

*S/TERRI-LYNN : LAND*
MCLS §440.3419          Witness

cc:  Public Notice;
  :  file.

--In God We Trust--

23 of 23

⑩

Ⓑ

Invoice No. _1201910 - 49866_ *(121)

### ORDER - Certified Delivery
### (F.O.B. / C.I.F.)

**CONVEYANCE:**

DELIVERY ORDER: The goods are to be delivered **(Michigan Republic)**,
To: _William-Frederick:Kemp Jr. ©1973_ ;(even if same are non-conforming),
the goods are identifiable pursuant and in accord UCC §7-202; and as
a **Document of Title** at UCC §1-201(15); This "Special Property" was
Original Issue: _11 /25 /1955_ ; and is hereby conveyed as a **certain**
Security; One of a set which is numbered, the whole of the parts
constituting one obligation, **evidence** within the written agreements
of the parties, sub and supra to the sum certain amount expressed
therein; Said **certain** Security is hereby Issued, conveyed, and **assigns
(Total Assignment)** upon Acceptance.

Issued by: _WILLIAM FREDERICK KEMP JR._ ©1973
UCC §1-201(39), UCC §3-415

-----------------------------------------------------------------

**ACCEPTANCE:**

Acceptance of goods occurs when the buyer:

a) Inspects the goods; and;

[]: **They are conforming.**

[X]: **They are Non-conforming, but I will accept/retain them in
spite of their non-conformity.**

I understand "Acceptance" of a part of any commercial unit is
acceptance of the entire unit; By my signature infra I accept the
"Special Property" as Issued and conveyed, including assigns (Total
Assignment) pursuant to UCC §3-302(1), and HJR-192.

_Barbara S. Lane_
Notary Agent MI./U.S.A.                    certified        "Signature constitutes Acceptance"

_3-27-06_                                                   Date: _William-Frederick:Kemp Jr._ ©1973
Date                                                                        27 March 06

**BARBARA S. LANE**
**NOTARY PUBLIC, CHIPPEWA CO., MI**
**MY COMMISSION EXPIRES**
_11-08-11_

Notice: "This Instrument is Admissible **evidence**
(Non-prima facie) evidence of My Lawful
Ownership fee simple absolute of the
**certain** Customer name securities
attaching and/or referenced under
the (121) Security.

_Infra 3 AMENDMENT_

i